**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: <br><br> America's Gardening Resource, Inc., *et al.,* <br><br> Debtors.[1] | Chapter 11 <br><br> Case No. 25-11180 (BLS) <br><br> (Jointly Administered) |

**DECLARATION OF ERIK K. ENDLER IN SUPPORT
OF MOTION OF THE DEBTORS AND DEBTORS-IN-POSSESSION FOR ENTRY OF
(I) AN ORDER (A) AUTHORIZING AND APPROVING BIDDING PROCEDURES IN
CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS'
ASSETS, (B) APPROVING THE DEBTORS' ENTRY INTO STALKING HORSE
AGREEMENT AND RELATED BIDDING PROCEDURES, (C) SCHEDULING
AUCTION AND SALE HEARING, (D) APPROVING FORM AND MANNER OF
NOTICE THEREOF, AND (E) GRANTING RELATED RELIEF; AND (II) ORDER (A)
APPROVING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS
FREE AND CLEAR OF ALL ENCUMBRANCES; AND (B) APPROVING THE
ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND
<u>UNEXPIRED LEASES</u>**

I, Erik K. Endler, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury that the following is true and correct to the best of my knowledge.

1.  I, Erik K. Endler, am over 21 years of age and am competent to testify to the matters set forth herein. I am the Head of Mergers & Acquisitions and Managing Director of Tower Partners, LLC a Maryland limited liability company ("**Tower**"). Tower is a leading boutique middle market investment banking firm which specializes in financial restructurings, M&A and private placement services. Over the past fifteen years, Tower has successfully completed over 200 transactions and consulting engagements on behalf of clients facing challenging situations nationwide.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: America's Gardening Resource, Inc. (9604); Gardener's Home LLC (0498); Serac Corporation (9800); IGH, Inc. (9336); Innovative Gardening Solutions, Inc. (3325). The location of the Debtors' corporate headquarters and the Debtors' service address in these chapter 11 cases is 128 Intervale Road, Burlington, Vermont 05401.

2. Prior to Tower, Mr. Endler was with Oppenheimer & Co. Inc., CIBC World Markets, Inc. and Deutsche Banc Alex. Brown, Inc. in their investment banking divisions.

3. He received a Bachelor of Business Administration from the University of Notre Dame, Summa Cum Laude, majoring in Finance and Computer Applications.

4. Mr. Endler is also a Chartered Financial Analyst.

5. Mr. Endler has over 25 years of experience in restructurings and investment banking including extensive experience in asset sales in a variety of industries including retail, manufacturing, distribution and real estate. Mr. Endler has completed over 100 sale, refinancing and restructuring assignments for distressed middle-market companies both in and outside of Chapter 11 proceedings and has testified in numerous Bankruptcy Courts across the U.S.

6. The Debtors' business is highly cyclical because the Debtors primarily offer garden supply products. The Debtors enjoy the "garden season" between March and June of each year, and the "holiday season" between November and December. Between these two "hot" seasons, the Debtors historically funded their businesses with a Line of Credit through the Bank of America, N.A. ("**BofA**"). Due to the lack of availability under the Debtors' prepetition Line of Credit and Third Forbearance Agreement with Bank of America, N.A., the Debtors did not have the ability to continue operating past the May/June gardening season and into the summer and fall of 2025 as a stand-alone enterprise. So, the Debtors retained Tower on or about December 17, 2024 to explore potential sale and refinancing transactions. Mr. Endler has become familiar with the day-to-day operations, financial condition, books and records, and business affairs of the Debtors and has actively participated in the marketing of the assets.

7. Mr. Endler worked closely with the Debtors' management to develop a plan to market the business to strategic and financial buyers. The robust marketing process began in January 2025 and remains ongoing.[2]

8. The Debtors' management, with the assistance of Mr. Endler, has determined that now is the time to sell all or substantially all of the assets to provide the Debtors' estates with the greatest recovery. The Debtors' business is heavily seasonal, and now that the gardening season is ending, its revenues will drop precipitously and it will be unable to continue to meet payroll, service its debts, and pay other ordinary course expenses.

9. Mr. Endler and management also determined in their business judgment that the net proceeds of the sale of the assets will be maximized by utilizing a "stalking horse" purchaser and then conducting an auction to sell the assets to the bidder making the highest or otherwise best bid.

10. Tower conducted due diligence on the business, operations, underlying assets and obligations of the Debtors, and met with and conducted numerous teleconferences with management and other representatives of the Debtors.

11. Tower also worked with management to build a comprehensive electronic data room containing detailed information regarding the Debtors' business.

12. Tower prepared materials related to the sale process, including a teaser designed to create demand for the Sale, and a Confidential Information Memorandum which outlined the opportunity.

13. Tower initiated a thorough marketing process of the Debtors' business. The process included contacting, through their proprietary database and industry connections, 1,115 financial

---

[2] Mr. Endler has also worked closely with David M. Baker of Aurora Management Partners, the Debtors' proposed Chief Restructuring Officer, since his retention.

and strategic potential purchasers. Specifically, Tower contacted 180 potential strategic purchasers and 879 potential financial purchasers, as well as 56 lenders. As a result, 51 separate non-disclosure agreements were executed, resulting in eight (8) indications of interest being signed. Several entities participated in management presentations. Three (3) letters of intent were submitted, and one (1) asset purchase agreement ("**APA**") was received.

14. After reviewing the APA, the Debtors determined that the offer presented by Garden's Alive, Inc. represents the best opportunity to maximize value for all stakeholders.

15. The Debtors negotiated extensively with Garden's Alive, Inc. with respect to the terms and conditions of the APA which was executed on June 19, 2025.

16. The APA contemplates the sale to Garden's Alive, Inc. of substantially all of the Debtors' assets relating to its business, excluding cash and cash equivalents, including checks, commercial paper, treasury bills, certificates of deposit and other bank deposits other than Unclaimed Property, all bank accounts, Damaged Inventory, all non-assigned insurance policies, causes of action, tax refunds and rebates, as more specifically described in the APA.[3]

17. On June 20th, Tower contacted groups that previously provided Indications of Interest (IOIs) to advise of the opportunity to overbid the contemplated Garden's Alive offer. On June 23rd, Tower relaunched a marketing effort to solicit overbids utilizing an updated "teaser" explaining the bankruptcy process and proposed dates for overbid. 177 strategic acquirors, 92 financial sponsors, 759 proprietary contacts, and the 51 groups that signed NDAs in the first marketing process were all contacted. 24 groups showed interest in exploring an overbid through the proposed bankruptcy sale. All groups have or were given access to the Confidential Information Presentation (CIP), Virtual Data Room and process letter explaining key (proposed)

---

[3] Capitalized terms not defined herein shall have the meanings ascribed to them in the Sale Motion [Doc. No. 9].

dates. As the date of this declaration, 14 of the 24 groups are still reviewing materials and/or contemplating an overbid. Tower continues to support the diligence efforts of these groups.

18. Mr. Endler and management believe that the assets have been sufficiently marketed, the market has spoken, and a sale on the current schedule is in the best interest of the Debtors, creditors, and estates. As of the date of this Declaration, Tower continues to engage with interested parties.

19. The proposed Bidding Procedures will maximize the value of the Assets for the benefit of the Debtors' estates, creditors and other interested parties.

20. The Bidding Procedures contemplate an auction process pursuant to which bids for the Purchased Assets will be subject to higher or otherwise better offers to maximize recovery for the benefit of the estate. The Bidding Procedures process ensures, among other things: (i) structure and logistical certainty to the process; (ii) the Debtors' ability to compare the relative values of competing offers, if any; (iii) that a potential Alternative Potential Purchaser has the financial ability to timely consummate its purchase; and (iv) meaningful bidding increments.

21. The proposed sale process for the Assets will provide a way for the Debtors to monetize the assets for the benefit of the Debtors' various stakeholders.

22. The sale process is fair and reasonable as:

   a) it provides adequate and reasonable notice of the opportunity to bid on the assets and of the opportunity to object to the sale;

   b) it provides for an open and competitive bidding process for the Assets. Throughout the case, the Debtors have solicited bids from nearly all likely purchasers and therefore additional time is not needed to canvass potential bidders; and

        c) the Debtors are proceeding in good faith and will make a showing at the Sale Hearing that the purchaser of the Assets has acted in good faith.

23.    Subject to approval of the Court, it is the Debtors' intention to serve the Sale Notice, on all creditors and the other parties in interest within five (5) business days after entry of the Bidding Procedures Order. The Sale Notice also includes instructions for how to obtain a copy of the Sale Motion and the Bidding Procedures Order.

24.    The proposed sale process is also required by the terms of the Debtors' agreement with BofA and Northfield Savings Bank for use of Cash Collateral, which was approved on an interim basis by Order entered on June 25, 2025 and without which, the Debtors would lack sufficient funds to operate their business and conduct an orderly sale process for a going concern sale. The Interim Cash Collateral Order provides that the Debtors shall have obtained a bidding procedures order on or before July 10, 2025. The milestones proposed by the Debtors in the bidding procedures are reasonable and were tailored to maximize the impact of the bidding process for these cases.

25.    The bidding procedures also offer a break-up fee of $360,000 as protection. Mr. Endler would testify that the Debtors' ability to offer the Stalking Horse Bidder bidding protections benefitted the Debtors' estates and stakeholders because it provides the incentive required to induce Garden's Alive, Inc. to submit or increase its Bid prior to the auction.

26.    With the relatively short due diligence period, Garden's Alive, Inc. expended substantial resources in negotiating the stalking horse APA and performing due diligence on an expedited basis.

27.    Mr. Endler would testify that the amount of the Break-up Fee and is consistent with other transactions of this size.

28. Mr. Endler would further testify that he believes that the ability to offer the Break-Up Fee induced, in part, Garden's Alive, Inc. to submit a significant Bid in advance of the Auction, and thereby established a committed baseline upon which all other Bids can be evaluated, which is beneficial to the Debtors' estates and their stakeholders.

29. In Mr. Endler's judgment, the proposed bid procedures implemented by the Debtors are fair and reasonable under the circumstances and provide the best process for the Debtors to solicit bids for the assets, obtain the highest and best offer for the assets, maximize recoveries, and avoid any further losses. The assets have been fully marketed and the relevant purchasers in the industry have had time to investigate and bid. Accordingly, the procedures are in the best interest of the Debtors, Creditors and estates.

Dated: July 8, 2025         By:    */s/ Erik K. Endler*
                                    Erik K. Endler
                                    Head of M&A / Managing Director
                                    Tower Partners, LLC
                                    5950 Symphony Woods Road
                                    Suite 302
                                    Columbia, MD 21044